Talos Capital Designated Activity Company v 257 Church Holdings LLC (2023 NY Slip Op 50662(U))

[*1]

Talos Capital Designated Activity Company v 257 Church Holdings LLC

2023 NY Slip Op 50662(U)

Decided on July 5, 2023

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 5, 2023
Supreme Court, New York County

Talos Capital Designated Activity Company, Plaintiff,

against
257 Church Holdings LLC, BA 616 COLLINS MEMBER LLC, LEEDS CAPITAL LLC, BEN ASHKENAZY, Defendant.

Index No. 651458/2020

Plaintiffs by: Meister Seelig & Fein PLLC, 125 Park Ave, 7th Floor, New York, NY 10017 
Defendants by: Friedman Kaplan Seiler & Adelman LLP, 7 Times Square, 28th Floor, New York, NY 10036

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 015) 374, 375, 376, 377, 378, 379, 380, 381, 387, 396 were read on this motion to/for RENEW/REARGUE/RESETTLE/RECONSIDER.
Mr. Ashkenazy's motion for leave to renew and/or reargue this Court's Decision and Order, dated June 6, 2023 (NYSCEF Doc. No. 366) as clarified by the Supplemental Order (NYSCEF Doc. No. 391), dated June 13, 2023 (collectively, hereinafter, the Prior Decision attached hereto as Exhibit A) is denied. As discussed below, Mr. Ashkenazy's motion is based on two false premises. 
First, it is based on the false suggestion that there are "new facts" since the briefing of the Plaintiff's motion for summary judgment such that Mr. Ashkenazy has not had a previous opportunity to brief the issue as to whether the plain language of Section 6.16 of the Payment Recourse Guaranty operated to discharge his obligation to pay the Late Payment Charge, prejudgment interest and the other charges set forth in the Judgment, dated June 13, 2023 (NYSCEF Doc. No. 390. In fact, there are no new material facts. Rather, Mr. Ashkenazy has taken a unilateral action—long after he breached his obligations under the contract at issue—upon which unilateral action he now attempts to frame new arguments to support his interpretation of the contract. This is not grounds for renewal.
The alleged "new facts" are that Mr. Ashkenazy now has decided unilaterally to paysome five years late (i.e., what he should have paid five years ago) — the principal amount of the Borrower's Five Year Paydown. Based on these "new facts" Mr. Ashkenazy now (and for the first time) has decided to advance the argument that his obligation to pay the Late Payment Charge and prejudgment interest was discharged and released by his unilateral late principal payment pursuant to Section 6.16 of the Payment Recourse Guaranty and that, as a result, he is not obligated to pay the Late Payment Charge or prejudgment interest.
To sustain this new argument, Mr. Ashkenazy now advances new arguments (not new facts) that (i) the business deal reflected in the plain language of the Section 6.16 of the Payment Recourse Guaranty (which three years into the litigation he admitted he never read) was that he could pay $20 million at maturity or whenever he chose to do so because he was to have the benefit of an additional five years of $20 million of equity without having to pay a late charge or any interest on that $20 million of equity that he was required to but failed to infuse when his obligation was triggered and due five years ago and (ii) the Payment Recourse Guaranty does not mean what it says — i.e., that Mr. Ashkenazy is obligated to pay "all obligations and liabilities of the Borrower to pay the Five Year Paydown" (NYSCEF Doc. No. 7, § 1.1 ) which obligations and liabilities include the Late Payment Charge and prejudgment interest on the obligation to pay $20 million, not $10 million, of principal then due. According to him, he was only ever obligated to pay the principal amount of $20 million.
First, this argument is frivolous because these are not new facts—they are new, unsupported arguments. Worse, they are new arguments that are at odds with arguments that Mr. Ashkenazy actually made when addressing this point as part of his opposition to Plaintiff's motion for summary judgment. To be clear, Mr. Ashkenazy made no mention of this newly minted argument in his opposition papers to the Plaintiff's motion for summary judgment (NYSCEF Doc. 385)—which was his opportunity to make this or similar arguments. In point of fact, and significantly, Mr. Ashkenazy did argue in his opposition papers to the motion for summary judgment that the Late Payment Charge was not his responsibility. But, he never made these particular two new arguments. Instead, in his opposition papers, Mr. Ashkenazy chose to argue that the Late Payment Charge was not due because (i) the Plaintiff had failed to establish that the Borrower had missed any payments due under the Payment Recourse Guaranty, (ii) the Payment Recourse Guaranty did not mention the words "Payment Recourse Guaranty" specifically and (iii) that even if it is due, only $500,000 is due and not $1,000,000:
ASHKENAZY OWES NO LATE PAYMENT CHARGE
As discussed, Plaintiff has not met its burden to establish that Borrower missed any payment with respect to the Five Year Paydown, see supra at 3-5, and therefore, no "Late Payment Charge" is due under the Loan Agreement. (See SUF, Ex. 1 § 2.3.4.)
Even if Plaintiff is correct that Borrower owed money on the Five Year Paydown Date, Ashkenazy would still have no obligation to pay a Late Payment Charge. In his Recourse Guaranty, Ashkenazy agreed to guaranty "all obligations and liabilities of Borrower to pay Five Year Paydown." (See SUF, Ex. 6 § 1.1(b).) Plaintiff points to nothing in the Recourse Guaranty mentioning the Late Payment Charge.
12 Even if Ashkenazy's obligations did include a Late Payment Charge, at most, it would be $500,000. Borrower was obligated to pay $10 million on or before the Five Year Paydown Date (see SUF, Ex. 1 § 2.4.3.); not $20 million, as Plaintiff claims (Meister Aff. ¶ 60).
(NYSCEF Doc. No. 385).[FN1]
Mr. Ashkenazy's new argument also is frivolous because these so-called "new facts" were always known to him and were in fact caused by him. It was Mr. Ashkenazy's decision not to timely honor his obligation set forth in the Payment Recourse Guaranty (which obligation was triggered and due only if [x] the Borrower did not timely pay the Five Year Paydown and [y] Mr. Ashkenazy himself caused the refinancing of the LLC Guarantors' properties (which he also controlled) such that the equity collateral supporting the requirement for additional equity during the life of the loan may not have been there for the lender to collect against).[FN2]
Accordingly, there are no new facts warranting renewal. 
Second, Mr. Ashkenazy asserts that reargument is warranted because the Court misapprehended that the plain language of Section 6.16 of the Payment Recourse Guaranty operates to discharge in full his obligation to pay the Late Payment Charge and prejudgment interest. Once again, this simply is a new argument based on no new facts—and is an argument that Mr. Ashkenazy could have made before. As discussed above, however, Mr. Ashkenazy now simply is attempting to argue that the business deal reflected in the Payment Recourse Guaranty was that he could pay the Five Year Paydown obligation whenever he wanted to without paying the Late Payment Charge or prejudgment interest because (i) the contracting parties agreed to cap the principal amount of his personal obligation at $20 million and (ii) Section 6.16 operates to discharge his obligation pay the Late Payment Charge and prejudgment interest when he finally, five years late, made the principal payment.
As discussed below, the Court did not misapply Section 6.16 of the Payment Recourse Guaranty. Rather, the Court took this provision at face value in the context of the business deal that the parties negotiated and that both sides argued were reflected in the documents as discussed in the Prior Decision. Mr. Ashkenazy has offered no new facts to support his interpretation and, as discussed below, the other loan documents in this integrated transaction and the factual record render his proposed reading wholly without merit and entirely frivolous. Section 6.16 of the Payment Recourse Guaranty simply confirms (as does Section 6.16 of the Payment Guaranty in this integrated transaction) that were the Borrower to have timely infused capital by paying the Five Year Paydown when it was due (five years into the loan),[FN3]
Mr. Ashkenazy's obligation and the LLC guarantors obligations would have been automatically released and discharged and without the need for further documentation or action by the transaction parties. Thus, the motion must be denied.
Pursuant to CPLR 2221(d), a motion for leave to reargue must be based on matters of law or fact allegedly overlooked or misapprehended by the Court in determining the prior motion but shall not include matters of fact not offered on the prior motion (Oparaji v Yablon, 159 AD3d 539, 540 [1st Dept 2018]). Pursuant to CPLR 2221I, a motion for leave to renew must be based on new facts not offered on the prior motion that would change the prior determination or a demonstration that there has been a change in the law that would change the prior determination (id.). Renewal is not available where a party seeks to assert a new legal theory after being unsuccessful on the original application (Nassau County v Metro. Transp. Auth., 99 AD3d 617, 619 [1st Dept 2012], lv dismissed and denied 21 NY3d 921 [2013]).
As discussed above, in opposing Plaintiff's motion for summary judgment, although Mr. Ashkenazy objected to the Late Payment Charge, Mr. Ashkenazy could have, but chose not to argue that Section 6.16 of the Payment Recourse Guaranty operated to discharge his obligations or that the documents reflect that his obligation was to be capped at $20 million such that under no circumstances was he to be responsible for the Late Payment Charge or prejudgment interest. That argument could have taken various forms—and it is not the responsibility of the Court to [*2]frame all the frivolous permutations that Mr. Ashkenazy could have pursued. Putting aside the lack of merit to any of these new arguments based on the facts in the record regarding the structure of the business deal agreed to by the other parties (as discussed in the Prior Decision) and as reflected in the loan documents, the fact that these arguments were not made when Mr. Ashkenazy had the opportunity to do so mandates denial of the renewal motion. 
At bottom, that Mr. Ashkenazy unilaterally decided to make a payment some five years late and after being sued for principal and other damages, is not a new fact warranting renewal. As Mr. Ashkenazy has always admitted, he intended to make the $20 million principal payment at maturity of the loan (i.e., and not when his obligation to make that payment was triggered and due five years ago). This has been his litigation position from the beginning of this case and, as discussed in the Prior Decision, Mr. Ashkenazy has argued that this was the business deal that he says he struck—as allegedly reflected in documents he ultimately admitted never reading. Having failed to make this argument in opposition to Plaintiff's summary judgment motion or at any time previously, the branch of the motion for renewal must be denied (Nassau County, 99 AD3d at 619).[FN4]

The branch of the motion seeking reargument must also be denied. The Court did not overlook or misapprehend whether the plain language of Section 6.16 of the Payment Recourse Guaranty operates to discharge Mr. Ashkenazy's obligation to pay the Late Payment Charge and prejudgment interest. Rather, in the Prior Decision, the Court has made clear its findings on the fully developed record by the parties as to how this contract worked and how that affects Mr. Ashkenazy's obligations under the contract at issue. Once again, Mr. Ashkenazy new argument that the lender is not entitled to be compensated for what would amount to a five year extension of its $20 million loan of the required equity is not correct for at least three reasons. 
Section 6.16 of the Payment Recourse Guaranty provides:
Section 6.16 Release of Guarantor. Notwithstanding anything to the contrary contained herein if, subject to the provisions of Section 6.14 above, the Five Year Paydown is repaid in full, Guarantors shall be released and discharged from all obligations and any liabilities under or in connection with this Guaranty. Agent shall promptly, upon request, provide written confirmation of such release on such repayment date, provided that no such documentation shall be required to effectuate such release
(NYSCEF Doc. No. 7, § 6.16). 
First, the reading of this provision urged by Mr. Ashkenazy  i.e., that he only guaranteed the payment of the principal amount of $20 million, is inconsistent with the business deal reflected in the express terms of the loan documents in this integrated transaction. Simply put, he leans in too heavy to the fact that Section 6.16 does not include the words "by Borrower." Pursuant to the terms of the Payment Recourse Guaranty, Mr. Ashkenazy agreed to pay all obligations and liabilities of the Borrower to pay the Five Year Paydown as a primary obligor:
Section 1.1 Guaranty of Obligation.
(a) Subject to the terms and conditions hereof, Guarantor hereby irrevocably and unconditionally guarantees to Loan Party and its successors and assigns the payment and performance of the Guaranteed Obligations (as defined below) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.
(b) As used herein, the term "Guaranteed Obligations" means all obligations and liabilities of Borrower to pay Five Year Paydown if any of the following has occurred:
(i) (a) if any pledge or encumbrance other than the Pledges shall encumber any direct or indirect interests in the Church Property (as such term is defined in the Church Pledge) or the Collins Property (as such term is defined in the Collins Pledge); provided that any as to any encumbrance of the Church Property or Collins Property that was not intentionally placed on such property by the owner thereof, Guarantor shall be liable only for losses [*3]incurred by Loan Party as a result of such pledge or encumbrance; or (2) if any loan shall be secured by a lien against the Church Property or the Collins Property, other than (A) the mortgage loan in existence as of the date hereof with respect to the Collins Property (provided that no new borrowings or refinancing under such existing loan facility is permitted hereunder) or (B) any other loan that is permitted under the Pledges;
(ii) (a) any Transfer (as such term is defined in the Collins Pledge) by Guarantor of any direct or indirect interests in the Collins Property, (b) any Transfer (as such defined in the Church Pledge) of any direct or indirect interests in the Church Property, or (c) any surrender, termination, cancellation, material change, material amendment, material supplementation or other material modification to or of the Owner Lease (as defined in the Church Pledge), in the case of any of the foregoing, in violation of the Pledges; provided that in the case of any Transfers addressed under clauses (a) and (b) above, if such Transfer was not intentionally caused by the holder of such interests in the Church Property or the Collins Property, as applicable, Guarantor shall be liable only for losses incurred by Loan Party as a result of such pledge or encumbrance
(iii) following Borrower's failure to pay the Five Year Paydown in accordance with the Loan Agreement only, if Guarantor, Borrower, Owner, Collins Owner, Collins Pledgor, Church Owner, Church Pledgor or any Affiliate of any of the foregoing, takes an affirmative action to interfere with Agent or fails to cooperate with a reasonable request of Agent made pursuant to its rights under the Payment Guaranty, the Collins Pledge, the Amendment or the Church Pledge in connection with Agent's exercise of remedies thereunder, including without limitation, if, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Agent or any Lender under or in connection with the Payment Guaranty, the Collins Pledge, the Amendment or the Church Pledge, seeks judicial intervention or injunctive or other equitable relief of any kind, or asserts a defense, claim or counterclaim against Agent or such Lender or Servicer in a pleading in any judicial proceeding in connection with any security for the Five Year Paydown, provided, that a court of competent jurisdiction, in determining liability under this clause (iii), also determines that such defense, claim, counterclaim, judicial intervention or claim for injunctive or other equitable relief was frivolous;
(iv) Intentionally deleted;
(v) any of Church Owner, Church Pledgor, Collins Owner or Collins Pledgor is substantively consolidated with any other Person; unless such consolidation was involuntary and not consented to by Church Owner, Church Pledgor, Collins Owner or Collins Pledgor, respectively, and is discharged, stayed or dismissed within sixty (60) days following the occurrence of such consolidation;
(vi) any of Church Owner, Church Pledgor, Collins Owner or Collins Pledgor files a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law;
(vii) the filing of an involuntary petition against Church Owner, Church Pledgor, Collins Owner or Collins Pledgor under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law by any other Person in which Church Owner, Church Pledgor, Collins Owner or Collins Pledgor colludes with such Person, and/or Church Owner, Church Pledgor, Collins Owner or Collins Pledgor solicits or causes to be solicited petitioning creditors for any involuntary petition against Church Owner, Church [*4]Pledgor, Collins Owner and/or Collins Pledgor by any Person;
(viii) If (A) Collins Pledgor shall or shall permit Collins Owner to enter into, materially modify, terminate or accept the surrender of any Lease (as such term is defined in the Collins Pledge) other than as permitted under the Collins Pledge or (B) Church Pledgor shall or shall permit Church Owner to enter into, materially modify, terminate or accept the surrender of any Lease (as such term is defined in the Collins Pledge) other than as permitted under the Collins Pledge; or
(ix) If (A) Collins Pledgor fails to pay Sale Proceeds to Agent in violation of Section 8(b) of the Collins Pledge or (B) Church Pledgor fails to pay Sale Proceeds to Agent in violation of Section 8(b) of the Church Pledge.
(c) Notwithstanding anything to the contrary in this Guaranty or in any of the other Loan Documents, Loan Party shall not be deemed to have waived any right which Loan Party may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Guaranteed Obligations or to require that all collateral shall continue to secure all of the Guaranteed Obligations owing to Loan Party in accordance with the Loan Documents
(NYSCEF Doc. No. 7, § 1.1 [emphasis added]). Indeed, his only obligation was at to pay all of the Borrower's obligations and liabilities to pay the Five Year Paydown. Thus, if payment had been timely made by the Borrower, he would have been released pursuant to Section 6.16. 
In addition, Mr. Ashkenazy did not obligate himself to pay only the Borrower's principalobligation in respect of the Five Year Paydown. Rather, pursuant to Section 2.3.4 of the Loan Agreement, the Borrower's obligation to pay the Five Year Paydown expressly included the Late Payment Charge:
2.3.4 Late Payment Charge. If any principal, interest or any other sum due under the Loan Documents (other than the Outstanding Principal Balance due and payable on the Maturity Date) is not paid by Borrower on the date on which it is due, Borrower shall pay to Agent for the account of Lenders upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law in order to defray the expense incurred by Lenders in handling and processing such delinquent payment and to compensate Lenders for the loss of the use of such delinquent payment. Any such amount shall be secured by the Pledge Agreement and the other Loan Documents to the extent permitted by law.
(NYSCEF Doc. No. 4, § 2.3.4; see NYSCEF Doc. No. 391, at 1-2 [emphasis added]). This was thus part of the obligation that Mr. Ashkenazy expressly guaranteed.
In other words, Section 6.16 of the Payment Recourse Guaranty, upon which Mr. Ashkenazy now relies, expressly confirms that if the Five Year Paydown is timely paid in full by the Borrower, the Guarantor"s" (of which he is one) are released and not liable. It is significant in this regard that Section 6.16. refers to Guarantor(s) and not merely "Guarantor" — i.e., Mr. Ashkenazy  because all the guarantors were released in the event of the timely infusion of equity required during the pendency of the loan by payment of the Five Year Paydown. Thus, the Payment Guaranty (i.e., the LLC's Guaranty) has a similar Section 6.16 confirming this proper [*5]reading:
Section 6.16 Release of Guarantor. Notwithstanding anything to the contrary contained herein if, subject to the provisions of Section 6.14 above, the Five Year Paydown is repaid in full, Guarantor shall be released and discharged from all obligations and any liabilities under or in connection with this Guaranty. Agent shall promptly, upon request, provide written confirmation of such release on such repayment date, provided that no such documentation shall be required to effectuate such release.
(NYSCEF Doc. No. 6, § 6.16).[FN5]
Stated differently, both the Payment Guaranty (i.e., the Church Guarantor and the Collins Guarantor's guaranty, also referred to as the LLC's Guaranty) and the Payment Recourse Guaranty reflect the business deal that if — and only if — the Five Year Paydown had been made by the Borrower and the additional equity required had been timely infused, the additional collateral to support this obligation (and Mr. Ashkenazy's personal guaranty supporting this additional collateral) was to be automatically released and discharged without further action from the parties. It therefore does not matter that the words "by Borrower" do not appear in Section 6.16 expressly and there are no issues of fact warranting reargument or a trial. Mr. Ashkenazy guaranteed the "all obligations and liabilities of Borrower to pay Five Year Paydown" (NYSCEF Doc. No. 7, § 1.1 [emphasis added] and, as such, Section 6.16 means that if there had been timely payment by Borrower, Mr. Ashkenazy and the other guarantors would have been released.
Second, in reviewing the entire Payment Recourse Guaranty, the Court must avoid an interpretation that would leave any contractual provision meaningless and should harmonize provisions so as not to leave any provision without force and effect (Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate Holdings, LLC, 149 AD3d 127, 133-134 [1st Dept 2017]).
Section 1.7 of the Payment Recourse Guaranty specifically provides that the payment of costs and expenses survives the payment of the Guaranteed Obligations (which, as discussed above and in the Supplemental Order, includes the Late Payment Charge):
Section 1.7 Payment of Expenses. In the event that Guarantor shall breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, within ten (10) days after demand by Agent, pay Agent all costs and expenses (including court costs and reasonable fees of outside counsel) actually incurred by Loan Party in the enforcement hereof or the preservation of Loan Party's rights hereunder, together with interest thereon at the Default Rate from the date requested by Agent until the date of payment to Agent. The covenant contained in this Section shall survive the payment and performance of the Guaranteed Obligations
(NYSCEF Doc. No. 7, § 1.7 [emphasis added]).
Given the foregoing, Section 6.16 of the Payment Recourse Guaranty therefore means, as indicated above, that if there had been timely full payment of the Five Year Paydown (which [*6]there was not) Mr. Ashkenazy's obligations under the Payment Recourse Guaranty (and the other LLC guarantors' obligations under the Payment Guaranty) would have been released. Section 6.16 does not however mean that if Mr. Ashkenazy paid the Five Year Paydown late (and whenever he chose) he was no longer responsible for payment of the Guaranteed Obligations and the other obligations set forth in the Payment Recourse Guaranty—which specifically state that they survive payment of the Guaranteed Obligations (which includes the Late Payment Charge).
Third, even were the Court to consider extrinsic evidence (which is not necessary given the clarity of the business deal and the contractual terms reflecting such business deal), the reading of the Payment Recourse Guaranty now urged by Mr. Ashkenazy also is inconsistent with the purpose behind the Payment Recourse Guaranty and the Five Year Paydown discussed by Robert Sorin in his affirmation as discussed in the Prior Decision (NYSCEF Doc. No. 76; see NYSCEF Doc. No. 366, at 5 n 3) — i.e., the need for additional collateral during the pendency of the loan and the needed consequences (as a deterrent) for upsetting the collateral supporting the obligation to infuse equity pursuant to the Five Year Paydown. Despite Mr. Ashkenazy's argument to the contrary, it is also at consistent with the David Kriss' (i.e., Mr. Ashkenazy's transaction counsel) email, where he indicated "I'm fine as long as it is capped at $20 mil" (NYSCEF Doc. NO. 302, at 1) because it is clear from that email that Mr. Kriss was discussing the principal amount of Mr. Ashkenazy's obligation and not whether the lender would also be entitled to collect the Late Payment Charge or prejudgment interest in the event of Mr. Ashkenazy's default.[FN6]
Indeed, if the reading urged by Mr. Ashkenazy were true, there would be [*7]no reason for Mr. Ashkenazy to pay the Five Year Paydown before maturity of the loan because the amount due would be exactly the same whether he paid it after five years when it was triggered and when it was due or many years later at maturity. Put another way, Mr. Ashkenazy again asks the Court to hold that his obligation is due at maturity and to endorse the absurd result (contrary to the business deal reflected in the documents as discussed in the Prior Decision) that Mr. Ashkenazy owes no more today—having made his principal payment five years late—then he would have had he made the principal payment on time five years ago when it was due. This simply is not supported by the factual record (as explained in the Prior Decision), and also makes no business or economic sense. The terms of the transaction that presumed the timely payment of the Five Year Paydown by Mr. Ashkenazy were not a panacea for avoiding payment of the Late Payment Charge or prejudgment interest, the costs of enforcement and the other costs provided for in the loan documents to which he agreed he would be responsible if he defaulted—which is precisely what Mr. Ashkenazy did. Thus, the motion must be denied.
For the avoidance of doubt, the Court notes that the Plaintiff did not waive its right to seek the Late Payment Charge or prejudgment interest by accepting Mr. Ashkenazy's $20 million because when this Court received an email from Mr. Ashkenazy indicating he had tendered the principal amount of his obligation, the Plaintiff confirmed that while payment was made of the principal amount, the Plaintiff still sought the Late Payment Charge, prejudgment interest and sanctions.
The Court has considered Mr. Ashkenazy's remaining arguments and finds them unavailing.
7/5/2023

Footnotes

Footnote 1:As discussed in the Supplemental Order (NYSCEF Doc. No. 391) and in this decision, this is not correct.

Footnote 2:For the avoidance of doubt, as discussed in the Prior Decision, it was Mr. Ashkenazy and his attorneys who engaged in frivolous conduct with the apparent intent of delaying these proceedings and thereby warranting sanction (NYSCEF Doc. No. 366, at 7-18). Having done so, Mr. Ashkenazy can not now claim that based on delays engineered by him and his attorneys the Plaintiff somehow forfeited bargained for consideration expressly set forth in the loan documents with respect to the Late Payment Charge and prejudgment interest—which are tied to Mr. Ashkenazy's default. 

Footnote 3:NYSCEF Doc No. 366, at 1-7.

Footnote 4:For completeness, the Court also notes that it only was after the motion for summary judgment was briefed and when the Plaintiff had moved for the award of $20 million of principal, plus the Late Payment Charge and prejudgment interest, that Mr. Ashkenazy, by email dated June 1, 2023, notified the Court that he had made a $20 million principal payment under the Payment Recourse Guaranty. Notably, at that time, Mr. Ashkenazy did not claim that pursuant to Section 6.16 of the Payment Recourse Guaranty his obligation to pay the Late Payment Charge or prejudgment interest was discharged, or that his personal obligation was to be capped at $20 million such that the Plaintiff is not entitled to the Late Payment Charges or prejudgment interest. This, even though Mr. Ashkenazy already was on notice that the summary judgment motion was fully briefed and that the Plaintiff already was seeking the Late Payment Charge and prejudgment interest:
Dear Justice Borrok:
We are counsel to defendant Ben Ashkenazy in the above-captioned action. We write to notify you that today, Ashkenazy made an unconditional payment of $20,000,000 to Talos Capital Designated Activity Company (f/k/a Talos Capital Limited). This was done pursuant to the terms of the Guaranty of Recourse Payment Obligations (Mezzanine Loan) executed as of November 25, 2013 by Ashkenazy (the "Guaranty"), in repayment of the "Five Year Paydown," as that term is used in the Guaranty. Out of an abundance of caution, payment was made a few days before required under the Guaranty; i.e., before the maturity date of the underlying loan. 
Respectfully Submitted,
Robert S. Smith
Friedman Kaplan Seiler Adelman & Robbins LLP
7 Times Square
New York, NY 10036-6516
rsmith&commat;fklaw.com
212.833.1125
fklaw.com

Footnote 5:"Guarantor" in the Payment Guaranty is defined as both the Church Guarantor and the Collins Guarantor collectively. 

Footnote 6:As discussed in the Prior Decision, in that email exchange upon which Mr. Ashkenazy now relies, the lawyers were discussing whether the Payment Recourse Guaranty was a so-called "loss guaranty" (NYSCEF Doc. No. 366, at 5) — i.e., where the lender would have to wait until after the LLC collateral was executed upon before moving on Mr. Ashkenazy's triggered personal obligation) — not whether the lender would be entitled to a Late Payment Charge or prejudgment interest in the event of Mr. Ashkenazy's default. For completeness, the Court notes that Mr. Ashkenazy neither (i) adduces an affidavit in support of this new argument from Mr. Kriss explaining how anyone could have understood his email to indicate that his position was that the Late Payment Charge and prejudgment interest was not to be available in the event of default by Mr. Ashkenazy and his subsequent principal payment five years late, nor (ii) proffers that this was his understanding in his own affidavit. In fact, Mr. Ashkenazy affidavit only provides that he made "a" payment not payment in full satisfaction of all of his obligations due under the Payment Recourse Guaranty:
1. I am a defendant in the above-captioned action. I submit this affidavit in support of my motion, pursuant to CPLR 2221(f), for leave to renew and/or reargue the motion for summary judgment by plaintiff Talos Capital Designated Activity Company ("Plaintiff").
2. On June 2, 2023, I unconditionally tendered a $20 million payment to Plaintiff pursuant to a Guaranty of Recourse Payment Obligations (Mezzanine Loan) executed as of November 25, 2013 by me (the "Guaranty").
3. A true and correct photocopy of the instrument used to make the payment referred to above is attached as Exhibit 1 hereto.
4. A true and correct copy of the cover letter I sent with the instrument is attached as Exhibit 2 hereto. 
(NYSCEF Doc. No 376 [emphasis added]). His transmittal letter) also does not indicate the new argument that he now advances that his $20 million was in full satisfaction of all of the Borrower's obligations and liabilities to pay the Five Year Paydown:
I write pursuant to the Guaranty of Recourse Payment Obligations (Mezzanine Loan) executed as of November 25, 2013 by me (the "Guaranty"). Please find enclosed a bank check for $20,000,000, which is being tendered unconditionally. This payment is being made pursuant to the Guaranty, and specifically, in repayment of the Five Year Paydown (as that term is used in the Guaranty).
Nothing herein shall constitute a waiver or admission and I fully reserve all of my rights, claims, defenses, and arguments.
(NYSCEF Doc. No. 378).
In any event, as discussed in this Decision and Order, even if Mr. Ashkenazy had attempted to offer this new explanation and position that would have failed because it would have been inconsistent with the business deal reflected in the loan documents—as the Court also previously explained in the Prior Decision.